UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**RUBEN LARA GARCIA**,

        Petitioner,

v.

**STEVE FRANKE**, Two Rivers Correctional Institution,

        Respondent.

Case No. 2:13-cv-00229-KI

OPINION AND ORDER

    Anthony D. Bornstein
    Federal Public Defender's Office
    101 SW Main Street, Suite 1700
    Portland, OR 97204

        Attorney for Petitioner

    Ellen F. Rosenblum
    Attorney General
    Nick M. Kallstrom
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE

Page 1 - OPINION AND ORDER

    Salem, OR 97301-4096

        Attorneys for Respondent

KING, Judge:

Petitioner Ruben Lara Garcia, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I deny the petition and dismiss this proceeding with prejudice.

## PROCEDURAL BACKGROUND

In July 2003, a jury in Multnomah County Circuit Court convicted Garcia of 42 counts for his alleged sexual abuse of two victims, J.G. and Y.G. The first three counts relate to J.G. are not at issue in this petition. The remaining counts can be summarized as follows:

> Counts 4 and 5 each alleged that petitioner committed Rape 1 against Y.G. when she was under 12 years of age between April 1, 1995 and January 30, 2000.
>
> Counts 6-8 each alleged that petitioner committed Sodomy 1 against Y.G. when she was under 12 years of age by having her mouth touch his sexual organs between April 1, 1995 and January 30, 2000.
>
> Counts 9-11 each alleged that petitioner committed Sodomy 1 against Y.G. when she was under 12 years of age by having his mouth touch her sexual organs between April 1, 1995 and January 30, 2000.
>
> Counts 22-31 each alleged that petitioner committed Sexual Abuse 1 against Y.G. when she was under 14 years of age by touching her breasts between April 1, 1995 and January 30, 2000.
>
> Counts 32-41 each alleged that petitioner committed Sexual Abuse 1 against Y.G. when she was under 14 years of age by touching her vagina between April 1, 1995 and January 30, 2000.
>
> Counts 42-51 each alleged that petitioner committed Sexual Abuse 1 against Y.G. when she was under 14 years of age by having her touch his penis between April 1, 1995 and January 30, 2000.

Page 2 - OPINION AND ORDER

Resp. Ex. 102.

The trial court sentenced Garcia to a total of 350 months in prison. Garcia appealed and the Oregon Court of Appeals issued a written opinion affirming his conviction. Specifically, the appellate court declined to find that the trial court committed plain error when it did not instruct the jurors that they had to agree on a specific incident of abuse for each charge on which they convicted Garcia. The Oregon Supreme Court denied Garcia's petition for review.

In his petition for post-conviction relief ("PCR"), Garcia alleged ineffective assistance of trial counsel. The PCR court denied relief. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

## LEGAL STANDARDS

A petition for writ of habeas corpus, filed by a state prisoner, shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court's findings of fact are presumed correct, and a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d) is a "'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" Hibbler v. Benedetti, 693 F.3d 1140, 1148 (9th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770 (2011)) (other internal quotation omitted), cert. denied, 133 S. Ct. 1262 (2013). "'[T]he question . . . is not whether a federal court believes the state court's determination was incorrect but

whether that determination was unreasonable–a substantially higher threshold.'" Id. at 1146 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).

A state court acts contrary to clearly-established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it reaches a result contrary to the outcome arrived at by the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court decision is an "unreasonable application" of clearly-established federal law if the court: (1) identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case; or (2) either unreasonably refuses to extend the governing legal principle or unreasonably extends it to a new context where it should not apply. Id. at 407, 413. Under this standard of review, a federal court may not issue a writ of habeas corpus because it concludes the state court applied clearly-established federal law erroneously or incorrectly. The state court decision must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

## DISCUSSION

I.     Whether Petitioner's Defense Counsel was Ineffective

In grounds for relief two and four, Garcia argues his defense counsel was ineffective for failing "to request crucial limiting and/or cautionary jury instructions and/or to move to make the charging indictment more clear[,] [d]efinite and certain," and to "take any meaningful steps to assure that appropriate jury instructions were given." Petition 6-7. Petitioner argues his counsel's deficiency "allowed petitioner to be convicted of multiple felony counts without assuring that the requisite number of jurors concurred as to each count and the factual predicates

Page 4 - OPINION AND ORDER

therefore." Petition 6.  In his third ground for relief, Garcia alleges he was convicted because his counsel failed to hire a defense expert.

The "clearly-established federal law" for ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  To prevail on a claim of ineffective assistance of counsel, petitioner must show both (1) that the attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced the defense.  Id., 466 U.S. at 687, 688.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy."  Id. at 689.  Reasonableness is judged as of the time of counsel's conduct, not in hindsight.  Id. at 689-90.  A defendant is prejudiced by counsel's poor performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

"[A] 'doubly deferential judicial review' applies to Strickland claims rejected by the state court."  Hibbler, 693 F.3d at 1150 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).  Accordingly, a federal court reviews a state court's application of Strickland for reasonableness, not for correctness.  Id. The federal court does not ask "'whether counsel's actions were reasonable'" but "'whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.'"  Id. (quoting Harrington, 131 S. Ct. at 788).

    A.    <u>Juror Concurrence</u>

Garcia argues in support of grounds for relief two and four that his trial counsel was ineffective for failing to ensure ten jurors[1] agreed on the same specific act described by Y.G. to convict Garcia of each count.

He argues, for example, that Y.G. testified Garcia touched her breasts between ten and twenty times in the living room, and between five and ten times in the hallway while the family was living at the Riviera Apartments. Y.G. testified the family moved to her grandmother's house on 82nd Avenue, where Garcia touched her breasts about twenty times in her mother's room, and kissed her on the lips or breasts three times in her room. The indictment, in Counts 22 through 31, alleged ten counts of sexual abuse by touching Y.G.'s breasts without distinguishing between the Riviera Apartments and Y.G.'s grandmother's house, and without distinguishing between the rooms in each location. Because of the way the indictment was phrased, and the way the prosecution presented the evidence, Garcia contends, it is possible each juror contemplated a different alleged touching of Y.G.'s breast to convict him of Count 22.

Garcia contends the same problem arose with respect to the other counts. Y.G. described Garcia touching her vagina about five times in the hallway at the Riviera apartment and, at her grandmother's house, about five times in the living room and ten or more times in her mother's room. Counts 32 through 41 (ten counts) alleged sexual abuse by touching of Y.G.'s vagina, without discriminating between locations or rooms. Finally, Y.G. testified that Garcia made her touch Garcia's penis with her hands at her grandmother's house in her mother's room around ten

---

[1] In Oregon, unanimity of only ten jurors is necessary to reach a verdict. ORS 136.450; Or. Const., Art. I, § 11.

times, less than five times in the living room, and more than once but fewer than five times in the laundry room. The indictment charged, in Counts 42 through 51 (ten counts), Garcia with sexual abuse by causing Y.G. to touch his penis.

Thus, Garcia argues, his trial counsel should have challenged the indictment, moved for an order to require the state to elect which act it relied upon for each count, and requested appropriate jury instructions to ensure at least ten jurors agreed on the same act to convict Garcia of each count.

Garcia raised this argument in his direct appeal. The Oregon Court of Appeals issued a written opinion declining to find the trial court plainly erred by not giving a Boots instruction– an instruction to the jury about the need for unanimity of ten jurors as to the material elements of each charge. State v. Garcia, 211 Or. App. 290, 295, 154 P.3d 730 (2007) (citing State v. Boots, 308 Or. 371, 780 P.2d 725 (1989)). The court commented that, at least in the context of plain error review, the location in which the sexual offense occurred was not a material element of any of the charges. Further, such an instruction is necessary "only when there is a real possibility of juror confusion with respect to the evidence as it relates to each charge." Id. at 296. In Garcia's case:

> The victim testified in very general terms about the approximate number of times the abuse took place, in various rooms in the house over the course of more than four years, and the jury convicted defendant on every count that came before it. We are unable to discern any plausible reason why a juror might have credited the victim's generalized testimony with respect to one incident or location versus another; nor does defendant suggest any such basis.

Id. at 297.

Page 7 - OPINION AND ORDER

The Oregon Court of Appeals recently validated this analysis when it found no error in a trial court's refusal to instruct a jury on the need for concurrence as to the facts constituting the offense. Specifically,

> when the evidence supports multiple, separate occurrences for a single offense but does not provide the jurors with enough specifics to distinguish one occasion from another in a way that would allow them to draw conflicting conclusions regarding the crime committed, a jury instruction requiring concurrence as to which factual occurrence constituted the crime charged is not required. The factual details suggesting separate incidents of the crimes in this case [multiple instances of sexual abuse by the defendant] were not of the type–such as the identity of the victim or the perpetrator–that have been held to be material facts requiring jury concurrence, and those details did not create an impermissible risk that the jury would be confused in distinguishing one occasion from another or would draw conflicting conclusions regarding the crime committed. Therefore, the trial court did not err by refusing to give defendant's instruction because the instruction did not correctly state the law as applied to the evidence in this case.

State v. Ashkins, 263 Or. App. 208, 224, 327 P.3d 1191 (2014). Indeed, "a jury concurrence instruction is not required as to the precise location or circumstances of defendant's various acts of abuse." Id. at 223. This is consistent with federal law. See Schad v. Arizona, 501 U.S. 624, 631-32 (1991) (plurality) (explaining "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict" with respect to facts making up particular element).

The PCR court concluded, given the state of the law, it was unlikely Garcia's trial counsel would have succeeded in obtaining a cautionary instruction, requiring the state to elect a separate factual occurrence for each count, or making the indictment more definite and certain.

I conclude, consistent with Garcia, Ashkins, and Schad, the jury did not need to agree on the location of the alleged sexual abuse. Additionally, given Y.G.'s general testimony about the sexual abuse, and Garcia's total denial that he had ever abused Y.G., the jurors would not have

credited only a portion of Y.G.'s testimony about one incident or location and not another; thus, I could not say there was an impermissible risk of jury confusion. Garcia's trial counsel was not ineffective, nor has Garcia demonstrated any prejudice by trial counsel's performance. The PCR court's rejection of Garcia's Strickland claim is neither contrary to, nor an unreasonable application of, clearly-established law.

      B.      Defense Expert

In his third ground for relief, Garcia alleges his trial counsel was deficient for failing to retain an expert witness who could challenge the testimony of Pamela Avila, the nurse practitioner who examined Y.G. at CARES Northwest[2] and who testified for the state. Garcia asserts his counsel's failure to call a responsive expert was completely unjustifiable when such evidence would have cast doubt on Y.G.'s testimony.

Avila testified that she examined Y.G. and noted "a couple of notches in the hymen, which indicate some sort of trauma, some sort of penetrating trauma." Tr. Vol. III, at 24. She explained "notches" are "kind of like a tear in the hymen. And the hymen is a certain size or depth and these were partial notches. They didn't go all the way to the base of the hymen, they went about halfway down, and there were two of them." Id. at 25. She also explained that "it was fairly clear evidence to me of penetrating trauma, like something went inside the vagina and tore the hymen. So [this finding] played a fairly major role in my making the diagnosis [of sexual abuse] in this case, although it doesn't always, but in this case it did." Id. She testified that it was "actually fairly common" to find no evidence of penetration in the physical examination even where there has been confirmed penetration. Id. at 27.

---

[2]A clinic designed to diagnose and treat child abuse.

Page 9 - OPINION AND ORDER

On cross-examination, Garcia's attorney questioned Avila in relevant part as follows:

Q: So your diagnosis of sexual abuse is based partially on what [Y.G.] said?

A: Yes.

Q: And partially on your physical examination?

A: Yes.

. . .

Q: If there had not been the scarring and or notching, you probably would have concluded that there likely hadn't been penetration?

A: No, I wouldn't have concluded that there hadn't been. I make the diagnosis based on both history and physical exam, and there was a lot in her history, meaning things that she said that were pretty compelling.

Garcia's attorney asked if anything else could have caused the notching, besides sexual penetration, and Avila agreed the notching could have been self-inflicted (i.e., masturbation with an object) or possibly caused by an accidental penetrating injury. On re-direct, Avila confirmed that she would have made the same diagnosis of sexual abuse even without her findings on physical examination.

Garcia provided the PCR court with the affidavit of Joanne Miller, also a nurse practitioner, who would have been available to testify on behalf of Garcia. After reviewing Avila's testimony, the CARES evaluation report, and Avila's physical examination notes, Miller pointed out the following discrepancy:

> The CARES evaluation report of [Y.G.] indicates a partial notch of the hymenal edge present at 8 o'clock and another at 9 o'clock. The report further finds a "transected hymen" and provides a diagnosis of sexual abuse based, in part, upon healed hymenal notches.

> However, in the physical examination section of the same report, the writer points [to] a far less definitive determination of the presence of actual hymenal notches. Here the writer references her observations as "possible notches." Based upon my review of the Colposcopic photographs, I would concur that there are "possible notches" present in the hymen and would not, to a reasonable degree of medical certainty, characterize them as actual hymenal notches.
>
> If the hymenal defects are in fact notches, I would characterize them as "superficial." I would further have testified that such notches can occur from trauma not related to sexual abuse and as a normal variant of the hymen. . . .

Resp. Ex. 120, at 3 (internal citations omitted).

Avila provided a responsive declaration in which she confirmed that her physical examination revealed two partial notches. She explained that her "reference to possible notches is a reference to the partial notches that I observed. After my examination of [Y.G.] with the photocoloscopic [sic], my assessment was that she did have the two partial hymenal notches which I noted in the narrative of my report, and which I testified to at the jury trial." Resp. Ex. 124, at 2.

The PCR court denied Garcia's claim because Garcia failed to produce any evidence to explain why his counsel did not call an expert. The PCR court agreed Miller's testimony "was certainly not a huge weight, but I think certainly could have been helpful. But I just don't think that you get there, because I just don't think the petitioner's done enough to show that the lawyer didn't meet the standard of care[.]" Resp. Ex. 128, at 21.

To provide constitutionally adequate assistance of counsel, no particular tactic or approach is required. Harrington, 131 S. Ct. at 788-89. "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence . . . . There are, however, countless ways to provide effective assistance in any

Page 11 - OPINION AND ORDER

given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id. (quotation marks and citation omitted). However, "counsel cannot be said to have made a tactical decision without first procuring the information necessary to make such a decision." Reynoso v. Giurbino, 462 F.3d 1099, 1112 (9th Cir. 2006).

Neither the PCR court nor I have any information as to the reason Garcia's trial counsel did not call an expert. Garcia argues Miller would have rebutted Avila's testimony that the notches could only have occurred from penetration and would have suggested that they were natural variants of the hymen–evidence which Garcia characterizes as vital to his defense. However, Garcia overvalues Miller's testimony. Avila explained in her PCR affidavit the discrepancy between the CARES report ("partial tears") and Avila's physical examination notes ("possible tears"). Additionally, Miller's testimony that notches can occur from trauma other than sexual abuse is no different from Avila's testimony on cross-examination, and Miller's assertion that such notches can be "a normal variant of the hymen" did not rule out notches as a result of sexual abuse. Trial counsel could reasonably have concluded cross-examining Avila would best support Garcia's defense, and that any defense expert's concession that the notches could be caused by sexual trauma would be more harmful than helpful. Further, the persuasive value of an expert is questionable here; any defense expert would be in a position of second-guessing Avila's conclusion using photographs alone.

Garcia has also failed to demonstrate prejudice. Avila made it clear that her opinion was based not only on the physical evidence but also on Y.G.'s reports, and that she would have come to the same conclusion had the physical findings been different. Any defense expert could not

have persuasively undermined Y.G.'s story. Avila herself testified that it was fairly common to find no physical evidence of penetration even when penetration is otherwise confirmed.

After reviewing the evidence presented at the trial and to the PCR court, the PCR court's decision finding no ineffective assistance of counsel was not contrary to nor an unreasonable application of Strickland.

II.     Unbriefed and Procedurally Defaulted Claims

Garcia did not brief his first ground for relief, which alleged his counsel was ineffective for failing to move to sever the trial as to each victim. Because Garcia failed to sustain his burden of demonstrating why he is entitled to relief on ground one, it is dismissed. See Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004) (petitioner bears burden of proving he is entitled to habeas relief); Silva v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002).

Additionally, Garcia argued in his brief that his trial counsel was ineffective for failing to challenge the indictment on the basis of lack of notice (as opposed to on the basis of factual predicates to ensure juror concurrence), but he did not allege such a claim in his habeas petition. The claim is not properly before me. See Rule 2(c), Rules Governing Section 2254 Proceedings (habeas petition must "specify all the grounds for relief that are available to the petitioner"); Green v. Henry, 302 F.3d 1067, 1070 n. 3 (9th Cir. 2002) (court need not consider claims not raised in petition).

Even were I to view the claim as properly raised in his petition, Garcia failed to properly present his claim to the state courts. Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A). A state prisoner

Page 13 - OPINION AND ORDER

satisfies the exhaustion requirement by "fairly presenting" his claim to the appropriate state courts at all appellate stages afforded under state law, including a state supreme court with powers of discretionary review. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526 U.S. 838, 845-47 (1999). When a state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. O'Sullivan, 526 U.S. at 848; Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. Coleman, 501 U.S. at 750.

Garcia's claim in the PCR court was that his trial counsel should have "challenged petitioner's indictment" so as "to ensure jury unanimity." Resp. Ex. 111, at 5-6; Resp. Ex. 128, at 6 (arguing to the PCR court, "The failure to challenge the indictment really boils down to an issue of concurrence."). The two claims–notice versus juror concurrence–are not "'sufficiently related' or 'intertwined' for exhaustion purposes . . . ." Wooten v. Kirkland, 540 F.3d 1019, 1925 (9th Cir. 2008); see State v. Hale, 335 Or. 612, 621, 627, 75 P.3d 448 (2003) (indictment provided sufficient notice, but jury not sufficiently instructed to ensure concurrence).

In sum, either because he failed to articulate the notice claim in his habeas petition, or because he failed to present it to the state courts and cannot do so now, Garcia's notice claim is denied.

## CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus [2] is denied. This proceeding is dismissed with prejudice. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ____6th____ day of February, 2015.


     /s/ Garr M. King
    Garr M. King
    United States District Judge